Honorable THOMAS W DORE
Chapter 13
Seattle, WA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| BEVERLY JANE CARY,<br><br>Debtor. | Chapter 13 Case No. **20-12450 TWD**<br><br>**Adversary Case No. 22-01000 TWD** |
| BEVERLY JANE CARY,<br><br>Plaintiff,<br><br>v.<br><br>PATCH SERVICES, LLC d/b/a NOAH; PATCH HOMES, INC.;<br><br>Defendants. | 1st AMENDED COMPLAINT TO<br><br>(1) DETERMINE NATURE AND EXTENT OF LIEN ;<br><br>(2) VIOLATION OF RCW 31.04, et. seq., WA CONSUMER LOAN ACT, WHICH CONSTITUTES A *PER SE* VIOLATION OF THE WA CONSUMER PROTECTION ACT, RCW 19.8, *et seq.*;<br><br>(3) RCW 19.86, *et seq.*, WA CONSUMER PROTECTION ACT;<br><br>(4) INTENTIONAL AND NEGLIGENT MISREPRESENTATION; and<br><br>(5) OBJECTION TO CLAIM 11<br><br>(6) QUIET TITLE |

COMES NOW Debtor and Plaintiff Beverly Jane Cary to pursue her claims that



LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Defendants' joint and several acts constituted violations of numerous Washington statutes, including the Consumer Loan Act, RCW 31.04, *et seq.*, which constitutes a *per se* violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; violations of the Consumer Protection Act; and Intentional and Negligent Misrepresentation, and form the basis for her objection to claim 11 and avoidance of Defendants' Deed of Trust.

## I. PARTIES, JURISIDCITON AND VENUE

1.1 Defendant PATCH HOMES, INC d/b/a NOAH, referred to herein as ("PATCH") was formed under the laws of the state of Delaware. Defendant PATCH was not registered with the Washington Secretary of State as a foreign corporation until **September 5, 2019**. Its nature of business was listed as "Home Equity". It became inactive on January 5, 2021 due to not filing the requisite documentation with the Washington Secretary of State. Defendant PATCH is not licensed with the Washington Department of Financial Institutions ("DFI") as a consumer lender, as required by RCW 31.04.025(1); 31.04.035(1). Defendant PATCH did register with the Washington Department of Revenue but there is no records indicating it ever paid taxes for conducting business in the State of Washington.

1.2 Defendant PATCH SERVICES, LLC ("Patch Services") is a Delaware limited liability company that was registered with the Washington Secretary of State as a foreign LLC on March 9, 2021. Its nature of business is listed as "Financial Servicers Provider". Defendant Patch Services is not licensed by Washington DFI as a consumer lender or loan servicer.

1.3 Defendants PATCH and Patch Services appear to interchangeably use their names in the subject loan documents referring to themselves or being referred to as either "lender" or "investor".

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

1.4 Jurisdiction. This adversary proceeding is commenced pursuant to BR 7001 *et seq* and 11 U.S.C. §§ 502 (b)(1) and 506 (d). Although an adversary proceeding brought as an objection to claim with a counterclaim is a core proceeding under to 28 U.S.C. §§ 157(b)(2)(B), (K) and/or (O) with non-core matters. Since the issues raised in this adversary proceeding include counterclaims that go beyond resolution of the claim itself, this matter is a non-core claim as beyond the scope of the creditor's proof of claim and outside of the bankruptcy context would not otherwise *require* adjudication in an Article III court. *Stern v. Marshall*, 564 U.S. 462, 496–98 (2011) (finding that a bankruptcy court had no constitutional power to evaluate the debtor's common law tort counterclaims because such claims were beyond the scope of the creditor's proof of claim and were claims of a nature that required an Article III court's adjudication).

1.5. Jurisdiction. The Plaintiff here is also requesting a jury trial and does not consent to have the jury matter heard in bankruptcy court and does not waive her rights. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).

1.6 Venue. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. FACTS

2.1 Beverly is a single woman who has lived in King County for most of her life. She has one daughter, Alycia, who is currently 34 years old. Alycia's son Kameron is now 7 years old and been diagnosed as autistic. The two of them have lived with Beverly since 2015.

2.2 She worked for Delta Airlines as flight attendant for 31 years and she retired on December 1, 2001, after receiving a payout offer from Delta following the September 11 crashes. She received a monthly pension payment from Delta until she reached the age of 62 when it was reduced due to her beginning to receive Social Security. She still receives some of

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

her pension income along with her Social Security, but her income is not substantial. Between the ages of 52 and 62, she also worked jobs at Home Depot, Chicos and the like to earn some extra money and increase future Social Security earnings.

2.3 In 1998, Beverly had a custom home built for her in Maple Valley, which she sold in 2006 in order to downsize. She made a profit of approximately $210,000.00. She decided to rent for awhile and in 2007, she purchased her current residence, located at 27834 31st Place South, Auburn, WA 98001-1819 ("Property") by putting down $150,000.00. She obtained a traditional mortgage to make the purchase and made the monthly payments while living in it until September 2009, when she moved to Florida to be near her closest friend and take a break from the Pacific Northwest. She could not sell the Property at that time without taking a significant loss due to the collapsed housing market. Instead, she rented it out and used those funds to make the mortgage payments.

2.4 Beverly returned to Washington in 2012 because her daughter was talking about getting married and it was time to come home. She rented a place while continuing to rent out the Property until August 2015. In September 2015, Alycia, Kameron and Alycia's husband Rick moved in. Later in 2015, Beverly refinanced the Property in order to reduce her interest rate from 6.35% to 4.56%. This resulted in a new mortgage with a balance of $110,000.00 and a monthly payment of $879.00.

2.5 By 2018, Beverly had very significant credit card debt and needed to get it under control, so she refinanced the Property again and ended up with a payment of $1,150.00 per month after she was paid off approximately $50,000.00 in other debt.

2.6 The reason Beverly was struggling financially and incurring significant credit card debt is because of unlawful charges incurred in her name by her daughter Alycia. Even

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

after the 2018 refinance, her credit card debt and balance on her car loan was approximately $62,000.00, most of which was attributable to fraudulent charges by Alycia on her credit cards and from Alycia stealing her debit card and making unauthorized withdrawals.

2.7 Alycia's drug problems began when she fell at work and seriously injured her back. She had unsuccessful back surgeries, including a failed spinal fusion in 2013. As a result, she became addicted to pain killers, which began to destroy her life. Beverly did not realize the problems Alycia was having with the drugs until she moved into her home in September 2015. Once Alycia and her boyfriend moved in with her, they began borrowing money from her for legitimate purposes, but it also became apparent that they were using the money for drugs as well. Beverly found herself devastated by her daughter's addiction and her efforts to deal with it, but also the financial damage Alycia's actions continued to cause Beverly.

2.8 Compounding Beverly's stress was that Alycia was in and out of rehab on a fairly regular basis and within a year or so of moving in, Alycia and Rick separated and they were fighting over custody of her grandson Kameron. Beverly helps care for Kameron and he has some serious problems. He was born premature with lung damage and has been diagnosed as autistic. All of this just makes the pressures on her almost unbearable.

2.9 Beverly's financial problems became exacerbated as Alycia continued to use her credit and debit cards without permission and in spite of Beverly's efforts to prevent her from having access to them. She also stole checks and gained access to Beverly's VENMO account to steal more money. Alycia kept running up very significant debt in Beverly's name again and again. While Beverly was stressing out in 2019 about how she would ever be able to pay off the debt and knowing that it was unlikely she could obtain a traditional refinance, she was attracted by a mailing she received from Defendant PATCH. The appeal of the advertisement from



LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Defendant PATCH was that the loan could close in two to three weeks and the promise of providing a loan to people who could not get traditional loans. Because Beverly was desperate for a loan that would relieve the financial pressures she was facing, a quick closing without traditional underwriting was very attractive.

2.10 Alycia became aware that Beverly was considering entering into the loan with Defendant PATCH and was pressuring her to get it. She was desperate and believed that no other options that included saving her home existed. She was also about to turn 70 and believed she wouldn't be able to work her way out of her desperate financial situation. Defendant PATCH offered very slick advertising and enticed Beverly into reaching out. Bev called the telephone number on the Defendant PATCH mailer but does not specifically remember with whom she spoke. PATCH offered her what she interpreted as a loan since they were going to give her money to pay off her unsecured debt and she would have to repay it plus interest at a later date. This was no ordinary loan, however, and Beverly did not receive any disclosures in advance of entering into the loan which she could assess or analyze in order to understand the loan terms.

2.11 While Patch entitles and describes their contract as a "Purchase Option Agreement" and disavows that it is a loan, the documents provided by the escrow company, American Land Title Association, to Beverly for signing referred to the documents as a "loan" and the proceeds as "Loan Amount" approximately118 times.

2.12 Defendant PATCH did not suggest that Beverly should look at other options to deal with her credit cards including credit counseling, seeking a further traditional refinance, credit counseling, a reverse mortgage, or to discuss her situation with a bankruptcy attorney. In fact, Beverly does not recall any disclosure inviting her to have the documents presented by

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Defendant PATCH reviewed by an attorney at all and doesn't believe one was provided. Again, she did not receive **any** disclosures in advance of the loan signing.

2.13 Rather than providing Beverly with standard loan terms which complied with state lending laws, Defendant PATCH demanded that she re-pay the loan with a percentage of her home's equity through a complex labyrinth of loan terms that no average consumer and even most experienced lawyers would be able to follow and understand, let alone calculate the interest rate, repayment requirements, etc. The Agreement also included an initial reduction in value.

2.14 Further, the unlawful loan provided by Defendant PATCH included a requirement, not disclosed in advance and only provided at the loan signing, a **non-revocable** Power of Attorney ("POA") giving Defendant PATCH the power to control the entirety of the contractual relationship and stealing from Beverly any control she might have over her home, the Property. The very broad powers in the POA includes: (1) allowing Defendant PATCH can force the sale of Beverly's home in the event she files a bankruptcy and if Beverly fails to "maintain", "preserve" or "repair" the Property according to the unilateral discretion of Defendant PATCH. The definition of "maintain" and "repair" include such generic terms as keeping the Property in "good condition". Again, allowing Defendant PATCH to decide for itself and without giving Beverly any ability to challenge its decisions whether she is or is not keeping the Property in "good condition".

2.15 Believing there were no other options and facing immense financial pressure, Beverly signed the PATCH documents on or about **July 3, 2019**, approximately two months **before** Defendant PATCH had registered to conduct any business in the State of Washington. And as noted above, Defendant PATCH was not then and never has been licensed to engage in



LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

consumer lending and to take a lien interest on Beverly's residence in the State of Washington. However, Beverly failed to understand core terms of the loan, which is understandable when one tries to read the complex and Byzantine terms included in the loan documents, such as Defendant PATCH's claim of a right to force the sale of her home prior to the end of the 10 year term of the loan; exactly how the repayment amount was calculated; how much Beverly would owe six (6) months after the documents were signed; how much would be owed after twelve (12) months; how much would be owed after three (3) years, and so on. In return for the approximately $62,000 that Defendant PATCH paid out on the loan, Beverly had no idea that it would demand in excess of $126,000.00 less than three years later, as it has done in her bankruptcy case.

2.16 Obviously, obtaining a loan from Defendant PATCH did not solve Beverly's financial problems and she found herself back in financial trouble again due to Alycia's continued addiction problems. She was required to file this bankruptcy to get some relief, but that was how she discovered the horrific nature of the loan she obtained from Defendant PATCH when she had to try to figure out how much she owed on it after a short period of time.

2.17 Upon request by Beverly's counsel, Defendant PATCH provided a "Final Payoff Statement" in the amount of $126,554.00 dated March 5, 2021. Defendant PATCH later filed a Proof of Claim in the amount of $122,500.00 on July 5, 2021. Apparently, Defendant PATCH cannot even calculate its own payoff calculations using the formula it created.

2.18 Defendant PATCH has even gone so far as to try to repeatedly oppose Beverly's attempts to get lawyers hired to represent her in challenging the validity of this loan agreement, telling this Court that Beverly doesn't have a right to challenge their unlicensed loan product and making threats about incurring legal fees in connection with their efforts to prevent her

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

from obtaining recovery that Defendant PATCH maintains it can charge her under the loan contract. In other words, Defendant PATCH is using its high-priced Silicon Valley lawyers to waste this Court's time by making frivolous arguments and legally unsupported opposition to Ms. Cary's right to challenge the terms of this unlawful loan while preparing to charge her for those efforts. This is yet another example of the horrific and onerous nature of the contractual terms of the unlawful loan provided to Beverly by Defendant PATCH, and the predatory nature of Defendant PATCH and all of its affiliated entities, as well as the members of the Defendants' LLCs.

2.19 Beverly has incurred damages and been injured in amounts to be determined later by the trier of fact but which include at this stage illegal and unlawful demands for interest and fees which Defendant PATCH is demanding in violation of Washington law. As outlined below, a loan made by an unlicensed lender which is secured by a residence does not allow the lender to recovery **any fees or interest** on the loan. RCW 31.04.035(2).

2.20 On or about August 21, 2019 Defendant PATCH, then caused to be filed through FIRST AMERICAN TITLE INSURANCE CO a Deed of Trust ("DOT") under King County Recording Number 20190821001118 securing their agreement.

2.20 On or about August 21, 2019 Defendant PATCH, then caused to be filed through FIRST AMERICAN TITLE INSURANCE CO a document entitled MEMORANDUM OF AGREEMENT under King County Recording Number 20190821001119 referencing the MEMORANDUM OF REAL ESTATE PURCHASE OPTION AGREEMENT and asserting the same "runs with the land".

## III. <u>CAUSES OF ACTION</u>

<u>First Cause of Action</u>

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

<u>Intentional and Negligent Misrepresentation</u>
<u>as Against All Defendants</u>

3.1 Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in the paragraphs above, inclusive, of the Factual Allegations above.

3.2 Ms. Cary maintains that there were numerous intentional and/or negligent misrepresentations made to her by Defendant PATCH about the terms of the loan, by and through their agents, as described more particularly hereinabove.

3.3 Ms. Cary was particularly harmed by the specific misrepresentations made by the representatives of Defendant PATCH about the terms of the loan, and intentional omissions about the loan terms prior to signing since they did not provide her with any information about the loan terms in advance, as described more particularly in the Facts section above. Included in the misrepresentations were assertions regarding the fact that it is a loan, in spite of Defendant PATCH's assertions to the contrary, the correct amount owing at any given time after the loan is made, the amounts that may be demanded in connection with the loan under Washington law, and the rights to completely control all of the terms of the contract and whether or not Beverly is complying with the loan terms.

3.4 As a result of the actions of Defendant PATCH and/or Defendant Patch Services, which is also referenced in the loan documents, Beverly has been harassed for monies that she does not owe and now faces the risk of losing her home and all of her equity therein.

<u>Second Cause of Action</u>
<u>Violation of the Consumer Protection Act</u>
<u>as Against All Defendants</u>

3.5 Ms. Cary incorporates herein by reference as though fully set forth at length

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

each and every allegation and statement contained in all of the Sections above, inclusive, and the Facts Statements, inclusive, and Paragraphs 3.1 through 3.4 of the Causes of Action above.

3.6 The Defendants have made numerous misrepresentations about the terms of the contract and whether or not it is a loan, whether the terms of the loan are compliant with Washington state law (they are not) and whether the loan can even be made under Washington law, as well as the amounts owing under the loan and whether Defendants can charge Beverly interest and any fees on the loan, as more particularly described above. These misrepresentations were unfair and deceptive, and they occurred in trade or commerce, which is Defendant PATCH's business model and purpose.

3.7 Ms. Cary maintains, based upon information and belief, that the Defendants have engaged in making similar misrepresentations to other Washington homeowners and/or that it had the capacity to do so previously and/or has the capacity to do so in the future.

Third Cause of Action
Violation of the Consumer Loan Act, which is a
*Per Se* Violation of the Consumer Protection Act
as Against All Defendants

3.8 Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, inclusive, and the Facts Statements, inclusive, and Paragraphs 3.1 through 3.7 of the Causes of Action above.

3.9 The Consumer Loan Act, RCW 31.04.035, **requires** any person or entity to be licensed under the CLA if they obtain a lien on a borrower's residence. Defendants do not have a license to make a consumer loan and the loan transaction at issue is a consumer loan secured by Ms. Cary's residence. A violation of RCW 31.04.035 is a *per se* violation of the Consumer

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Protection Act and as such, Defendants are liable to Ms. Cary for their violations of the law, as more particularly described above in Facts Section.

3.10 A *per se* violation of the CPA under the CLA, RCW 31.04.208, u the requirements of (1) unfair or deceptive act, (2) in trade or commerce, and (3) affecting the public interest. *Id.* As identified above, Ms. Cary has suffered injuries and incurred damages as a direct result of the actions of all of the Defendants in connection with their violations of the CLA. Therefore, she is entitled to recover damages, treble damages and reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief to make certain that other Washington consumers are not similarly harmed by the actions of these Defendants. In addition, the Defendants may not collect **any** interest on the loan nor any fees, and if any of these amounts have already been paid by Ms. Cary, either through the loan terms or other means, all of these Defendants must refund those amounts to her.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ms. Cary prays for the following relief:

1. Judgment against all of the Defendants in an amount to be proven at trial for recovery of her out of pocket damages, as well as the value of the injuries she has suffered;

2. An award of attorneys' fees and costs in an amount to be proven at trial;

3. For injunctive relief against all of the Defendants to prevent any other Washington consumers from being harmed by the unlawful, unlicensed business activities of all of the Defendants;

4. Avoidance of Plaintiff's DOT and MEMORANDUM AGREEMENT pursuant to 11 U.S.C. § 506 (d);

5. Disallowance of claim number 11 as a secured claim; and



LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

6. For such other and further relief as the Court deems just and proper.

DATED this 17th day of January, 2022.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.

By: /s/Melissa A. Huelsman
Melissa A. Huelsman, WSBA #30935
Attorney for Plaintiff
705 2nd Ave, Ste 606
Seattle, WA 98104
*mhuelsman@predatorylendinglaw.com*
Tel# (206) 475-4504

HENRY & DEGRAAFF, PS

By: /s/ Christina L Henry
Christina L Henry, WSBA #31273
Attorney for Plaintiff
119 1st Ave. S, Ste 500
Seattle, WA 98104
*chenry@hdm-legal.com*

LAW OFFICE OF MARK McCLURE, PS

By: /s/ Mark McClure
Mark McClure, WSBA #24939
Attorney for Plaintiff
1103 W Meeker St, Ste 101
Seattle, WA 98032
*mark@mcclurelawgroup.com*