# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

BEVERLY JANE CARY,

    Debtor.

---

BEVERLY JANE CARY,

    Plaintiff,

v.

PATCH SERVICES, LLC d/b/a NOAH; PATCH HOMES, INC.; FIRST AMERICAN TITLE INSURANCE COMPANY LENDERS ADVANTAGE,

    Defendants.

Chapter 13 Case No. **20-12450 TWD**

**Adversary Case No. 22-01000-TWD**

SECOND AMENDED COMPLAINT:

(1) TO DETERMINE NATURE AND EXTENT OF LIEN, IF ANY AND TO QUIET TITLE;
(2) VIOLATION OF RCW 31.04, *et. seq.*, WA CONSUMER LOAN ACT, WHICH CONSTITUTES A *PER SE* VIOLATION OF THE WA CONSUMER PROTECTION ACT, RCW 19.8, *et seq.*;
(3) WA USURY STATUTE, RCW 19.52, *et seq.*, WHICH CONSTITUTES A *PER SE* VIOLATION OF THE WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.*
(4) WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.*;
(5) INTENTIONAL AND NEGLIGENT MISREPRESENTATION;
(6) WA ESCROW AGENT REGISTRATION ACT, RCW 18.44, *et seq.*, WHICH CONSTITUTES A *PER SE* VIOLATION OF THE WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.*;
(7) VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601, *et seq.*;
(8) VIOLATIONS OF THE TRUTH IN LENDING ACTION, 15 U.S.C. § 1639c(e)(3);

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

(9) WA CONSUMER PROTECTION ACT, RCW 19.86, *et seq.* RE: UNLAWFUL ARBITRATION CLAUSE;
(10) OBJECTION TO CLAIM 11

COMES NOW Debtor and Plaintiff Beverly Jane Cary to pursue her claims that Defendants' joint and several acts constitute violations of numerous Washington statutes, including the Consumer Loan Act, RCW 31.04, *et seq.* and the Escrow Agent Act, RCW 18.44, *et seq.*, which constitute a *per se* violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*; stand-alone violations of the Consumer Protection Act, RCW 19.86, *et seq.*; violations of the Usury statute, RCW 19.52, *et seq.*; Intentional and Negligent Misrepresentation; to Quiet Title as against the unlawful lien; violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, and form the basis for her objection to claim 11 and avoidance of the PATCH Defendants' Deed of Trust.

## I. **PARTIES, JURISDICTION AND VENUE**

1.1     Defendant PATCH HOMES, INC d/b/a NOAH, referred to herein as ("PATCH") was formed under the laws of the state of Delaware. Defendant PATCH was not registered with the Washington Secretary of State as a foreign corporation until **September 5, 2019**. Its nature of business was listed as "Home Equity". It became inactive on January 5, 2021 due to not filing the requisite documentation with the Washington Secretary of State. Defendant PATCH is not licensed with the Washington Department of Financial Institutions ("DFI") as a consumer lender, as required by RCW 31.04.025(1); 31.04.035(1). Defendant PATCH did register with the Washington Department of Revenue but there is no records

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECOND AMENDED COMPLAINT - 2
Case 22-01000-TWD     Doc 4     Filed 03/04/22     Ent. 03/04/22 16:47:20     Pg. 2 of 31

indicating it ever paid taxes for conducting business in the State of Washington.

1.2     Defendant PATCH SERVICES, LLC ("Patch Services") is a Delaware limited liability company that was registered with the Washington Secretary of State as a foreign LLC on March 9, 2021. Its nature of business is listed as "Financial Servicers Provider". Defendant Patch Services is not licensed by Washington DFI as a consumer lender or loan servicer.

Defendants PATCH and Patch Services appear to interchangeably use their names in the subject loan documents referring to themselves or being referred to as either "lender" or "investor".

1.3     Defendant FIRST AMERICAN TITLE INSURANCE COMPANY LENDERS ADVANTAGE ("Lenders Advantage") appears to be licensed in Washington state with the Office of the Insurance Commissioner using only the name FIRST AMERICAN TITLE COMPANY. It acted as an escrow agent in connection with the loan closing of the subject transaction. Ms. Cary will be investigating its licensing in Washington state to make certain that it is compliant such that it could act as an escrow agent in Washington. In connection with that closing, Defendant Lenders Advantage required Beverly to sign an Escrow Agreement which includes a mandatory arbitration clause. Mandatory arbitration clauses are expressly prohibited under federal law in connection with residential mortgage loans which are the principal dwelling of the borrower. Other entities in the making of the loan, such as escrow companies, cannot assist lenders in trying to avoid that requirement by including a mandatory arbitration clause in other contractual terms.

1.4     Jurisdiction. This adversary proceeding is commenced pursuant to BR 7001 *et seq* and 11 U.S.C. §§ 502 (b)(1) and 506 (d). Although an adversary proceeding brought as an objection to claim with a counterclaim is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B),

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

(K) and/or (O) with non-core matters. Since the issues raised in this adversary proceeding include counterclaims that go beyond resolution of the claim itself, this matter is a non-core claim that lies beyond the scope of the creditor's proof of claim. Thus, outside of the bankruptcy context, many of the claims would not otherwise *require* adjudication in an Article III court. *Stern v. Marshall,* 564 U.S. 462, 496–98 (2011) (finding that a bankruptcy court had no constitutional power to evaluate the debtor's common law tort counterclaims because such claims were beyond the scope of the creditor's proof of claim and were claims of a nature that required an Article III court's adjudication).

1.5.    Jurisdiction. The Plaintiff here is also requesting a jury trial and does not consent to have the jury matter heard in bankruptcy court and does not waive her rights. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989).

1.6     Venue. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. <u>FACTS</u>

2.1     Beverly is a single woman who has lived in King County for most of her life. She has one daughter, Alycia, who is currently 34 years old. Alycia's son Kameron is now 7 years old and been diagnosed as autistic. The two of them have lived with Beverly since 2015.

2.2     She worked for Delta Airlines as flight attendant for 31 years and she retired on December 1, 2001, after receiving a payout offer from Delta following the September 11 crashes. She received a monthly pension payment from Delta until she reached the age of 62 when it was reduced due to her beginning to receive Social Security. She still receives some of her pension income along with her Social Security, but her income is not substantial. Between the ages of 52 and 62, she also worked jobs at Home Depot, Chicos and the like to earn some extra money and increase future Social Security earnings.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

2.3     In 1998, Beverly had a custom home built for her in Maple Valley, which she sold in 2006 to downsize. She made a profit of approximately $210,000.00. She decided to rent for a while and in 2007, she purchased her current residence, located at 27834 31st Place South, Auburn, WA 98001-1819 ("Property") by putting down $150,000.00. She obtained a traditional mortgage to make the purchase and made the monthly payments while living in it until September 2009, when she moved to Florida to be near her closest friend and take a break from the Pacific Northwest. She could not sell the Property at that time without taking a significant loss due to the collapsed housing market. Instead, she rented it out and used those funds to make the mortgage payments.

2.4     Beverly returned to Washington in 2012 because her daughter was talking about getting married and it was time to come home. She rented a place while continuing to rent out the Property until August 2015. In September 2015, Alycia, Kameron and Alycia's husband Rick moved in. Later in 2015, Beverly refinanced the Property in order to reduce her interest rate from 6.35% to 4.56%. This resulted in a new mortgage with a balance of $110,000.00 and a monthly payment of $879.00.

2.5     By 2018, Beverly had very significant credit card debt and needed to get it under control, so she refinanced the Property again and ended up with a payment of $1,150.00 per month after she paid off approximately $50,000.00 in other debt.

2.6     The reason Beverly was struggling financially and incurring significant credit card debt is because of unlawful charges incurred in her name by her daughter Alycia. Even after the 2018 refinance, her credit card debt and balance on her car loan was approximately $62,000.00, some of which was attributable to fraudulent charges by Alycia on her credit cards and from Alycia stealing her debit card and making unauthorized withdrawals.

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

2.7     Alycia's drug problems began when she fell at work and seriously injured her back. She had unsuccessful back surgeries, including a failed spinal fusion in 2013. As a result, she became addicted to pain killers, which began to destroy her life.  Beverly did not realize the problems Alycia was having with drugs until she moved into her home in September 2015. Once Alycia and her husband moved in with her, they began borrowing money from her for legitimate purposes, but it also became apparent that Alycia was also using the money for drugs as well. Beverly found herself devastated by her daughter's addiction and her efforts to deal with it, but also the financial damage Alycia's actions continued to cause Beverly.

2.8     Compounding Beverly's stress was the fact that Alycia went to rehab once and a detox place three times beginning in 2020 and nothing worked to stop her addiction.  Alycia and Rick separated about a year after they moved in and they were fighting over custody of her grandson Kameron. Beverly helps care for Kameron and he has some serious problems. He was born premature with lung damage and has been diagnosed as autistic. All of this just makes the pressures on Beverly almost unbearable.

2.9     Beverly's financial problems became exacerbated as Alycia continued to use her credit and debit cards without permission and in spite of Beverly's efforts to prevent her from having access to them. She also stole checks and gained access to Beverly's VENMO account to steal more money. Alycia kept running up very significant debt in Beverly's name again and again. While Beverly was stressing out in 2019 about how she would ever be able to pay off the debt and knowing that it was unlikely she could obtain a traditional refinance, she was attracted by a mailing she received from PATCH Defendants. The appeal of the advertisement from Defendant PATCH was that the loan could close in two to three weeks with the promise of providing a loan to people who could not get traditional loans. Because Beverly was desperate

SECOND AMENDED COMPLAINT - 6

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Case 22-01000-TWD    Doc 4    Filed 03/04/22    Ent. 03/04/22 16:47:20    Pg. 6 of 31

for a loan that would relieve the financial pressures she was facing, a quick closing without traditional underwriting was very attractive.

2.10    Alycia became aware that Beverly was considering entering into the loan with PATCH Defendants and was pressured her to get it. She was desperate and believed that no other options that included saving her home existed.  She was also about to turn 70 and believed she wouldn't be able to work her way out of her desperate financial situation. Defendant PATCH offered very slick advertising and enticed Beverly into reaching out.  Bev called the telephone number on the Defendant PATCH mailer but does not specifically remember with whom she spoke. The PATCH Defendants offered her what she interpreted as a loan since they were going to give her money to pay off her unsecured debt and she would have to repay it with interest at a later date. This was no ordinary loan, however, and Beverly did not receive any disclosures in advance of entering into the loan which she could assess or analyze in order to understand the loan terms.

2.11    While the PATCH Defendants entitles and describes their contract as a "Purchase Option Agreement" and repeatedly disavows that it is a loan, the documents provided by the escrow company, Defendant Lenders Advantage, to Beverly for signing referred to the documents as a "loan" and the proceeds as "Loan Amount" approximately118 times. In numerous places throughout the documents drafted and presented to Beverly for signature by Defendant PATCH, there are references to amounts financed, fees and charges that Beverly must re-pay or pay outright that are solely for the benefit of the PATCH Defendants and to increase its profit when it obtains repayment of the amounts advanced to Beverly, as well as its profit from the transaction.

2.12    PATCH Defendants did not suggest that Beverly should look at other options to

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

deal with her credit cards including credit counseling, seeking a further traditional refinance, credit counseling, a reverse mortgage, or to discuss her situation with a bankruptcy attorney. While PATCH is not obligated to have these discussions, it is important in this instance since their product was being represented as not a loan at an effort in inducing her to choose it, instead of the other options. In fact, Beverly does not recall any of the discussions she had with PATCH Defendants wherein anyone told her she had the right to have the loan documents reviewed by an attorney. She has now been made aware that the documents she signed contained that language, but she has no memory of seeing it.

2.13    Most importantly, Beverly did NOT receive the loan disclosures required under federal and state lending laws in advance of the loan signing. Instead, she was provided with alleged summaries of the documentation that no layperson would ever be able to actually understand and certainly no layperson would ever be able to understand the true cost associated with the making of this loan, nor of the risk of loss of homeownership that is very real given the outrageous terms. 12 C.F.R. § 1024.2(b) defines a "federally regulated mortgage loan" as follows:

> Federally related mortgage loan means:
>
> (1) Any loan (other than temporary financing, such as a construction loan):
> (i) That is secured by a first or subordinate lien on residential real property, including a refinancing of any secured loan on residential real property, upon which there is either:
> (A) Located or, following settlement, will be constructed using proceeds of the loan, a structure or structures designed principally for occupancy of from one to four families (including individual units of condominiums and cooperatives and including any related interests, such as a share in the cooperative or right to occupancy of the unit);
> . . . .

12 C.F.R. § 1024.2(b). Ms. Cary's loan meets that definition.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

1

2.14    Under federal law, creditors may not generally exclude charges from the

2    disclosed finance charge that are payable by the consumer incident to the extension of credit as

3    required by 15 U.S.C. § 1605 and Regulation Z § 1026.4.  If the creditor fails to include such a

4    charge, it improperly discloses the finance charge in violation of 15 U.S.C. § 1638(a)(3) and

5    Regulation Z § 1026.18(d).  If the PATCH Defendants had actually calculated the annual

6    percentage rate (APR) and disclosed it in advance of the making of the loan, as required by the

7    Truth in Lending Act, the rate would have been based upon improperly calculated and

8    undisclosed finance charges and an overstated amount financed in violation of 15 U.S.C. §

9    1606, Regulation Z § 1026.22. A creditor also unlawfully understates the APR in violation of

10   15 U.S.C. § 1638(a)(4) and Regulation Z § 1026.18(e).  Regulation Z defines the term

11   "finance charge" as "the cost of consumer credit." 12 CFR § 1026.4 (2004).

12

13   2.15    The PATCH Defendants did not comply at all with any of the TILA provisions

14   regarding advance disclosure of the loan terms in advance of the loan signing. This also

15   violated the Washington Consumer Loan Act which incorporated TILA requirements into its

16   language.

17

18   2.16    The PATCH Defendants are covered by TILA loan disclosure requirements

19   because they make more than five (5) loans per year. The PATCH Defendants were required to

20   provide Ms. Cary with the Loan Estimate within three business days of the receipt of the

21   consumer's loan application. 12 C.F.R. § 1026.19(e)(1). That Estimate must contain a good

22   faith estimate of credit costs and transaction terms. If any information necessary for an accurate

23   disclosure is unknown, the creditor must make the disclosure based on the best information

24   reasonably available at the time the disclosure is provided to the consumer and use due

25   diligence in obtaining the information. 12 C.F.R. § 1026.19(e)(1)(i); Comment 19(e)(1)(i)-1).

26

27

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

The Estimate must be in writing and contain the information prescribed in § 1026.37. The creditor must disclose only the specific information set forth in 12 C.F.R. § 1026.37(a) through (n), as shown in the CFPB's form in appendix H-2, consistent with 12 C.F.R. § 1026.37(o).

2.17 Delivery must satisfy the timing and method of delivery requirements. The creditor is responsible for delivering the Loan Estimate or placing it in the mail no later than the third business day after receiving the application. 12 C.F.R. § 1026.19(e)(1)(iii)). The PATCH Defendants were required to use form H-24, promulgated by the CFPB. 12 C.F.R. § 1026.37(o)(3)(i). PATCH Defendants did not make any disclosures within three business days of Ms. Cary's application or at all, nor did they use form H-24.

2.18 Rather than providing Beverly with standard loan terms which complied with federal and state lending laws, The PATCH Defendants demanded that she re-pay the loan with a percentage of her home's equity through a complex labyrinth of loan terms that no average consumer and even most experienced lawyers would be able to follow and understand, let alone calculate the interest rate, repayment requirements, etc. The Agreement also included an initial reduction in the alleged value of the Property and allowed Defendant PATCH to exclusively control the process of determining the value of the Property throughout the history of the transaction.

2.19 Further, the unlawful loan provided by the PATCH Defendants included a requirement, not disclosed in advance and only provided at the loan signing, of a **non-revocable** Power of Attorney ("POA") giving the PATCH Defendants the power to control the entirety of the contractual relationship and stealing from Beverly any control she might have over her home, the Property. The very broad powers in the POA includes: (1) allowing Defendant PATCH to force the sale of Beverly's home in the event she files a bankruptcy and

SECOND AMENDED COMPLAINT - 10

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Case 22-01000-TWD    Doc 4    Filed 03/04/22    Ent. 03/04/22 16:47:20    Pg. 10 of 31

if Beverly fails to "maintain", "preserve" or "repair" the Property according to the unilateral discretion of Defendant PATCH. The definition of "maintain" and "repair" includes such generic terms as keeping the Property in "good condition". Again, allowing Defendant PATCH to decide for itself and without giving Beverly any ability to challenge its decisions, whether she is or is not keeping the Property in "good condition", which then permits Defendant PATCH to force the sale of her home and repeat its very significant profits that it disavows is interest. Beverly maintains that the amounts over and above what was loaned to her is interest that Defendants seek to mischaracterize in an effort at avoiding federal and state lending laws.

2.20    Believing there were no other options and facing immense financial pressure, Beverly signed the PATCH Defendants' documents on or about **July 3, 2019**, approximately two months **before** Defendant PATCH had registered to conduct any business in the State of Washington. And as noted above, Defendant PATCH was not then and never has been licensed to engage in consumer lending and to take a lien interest on Beverly's residence in the State of Washington. That lien is evidenced by a Deed of Trust, which is consistent with Washington's requirements that any encumbrance be evidenced by a deed. RCW 64.04.010. The PATCH Defendants' Deed of Trust is most certainly an "encumbrance". Further, a deed of trust in Washington is treated as a mortgage on real property. RCW 61.24.020. This is irrespective of the PATCH Defendants efforts to characterize the transaction as anything other than a mortgage loan. *See also,* RCW 61.24.005(2) which defines "beneficiary" in a deed of trust as "the holder of the instrument or document evidencing the obligations secured by the deed of trust". Defendant PATCH has identified itself as the "beneficiary" in the Deed of Trust it required Beverly to sign.

2.21    Beverly failed to understand the core terms of the loan, which is understandable

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

when one tries to read the complex and Byzantine terms included in the loan documents, such as Defendant PATCH's claim of a right to force the sale of her home prior to the end of the 10 year term of the loan; exactly how the repayment amount will be calculated; how much Beverly would owe six (6) months after the documents were signed; how much would be owed after twelve (12) months; how much would be owed after three (3) years, and so on.  In return for the approximately $62,000 that Defendant PATCH paid out on the loan to Beverly and on her behalf for her debts, Beverly had no idea that it would demand in excess of $126,000.00 less than three years later, as it has done in her bankruptcy case.

2.22    Among the other absurd terms of the unlawful loan made by the PATCH Defendants are the following, including terms of the Real Estate Option Agreement, Sections 5.3, 6.1, 6.2, 7 and 19, including subsections and in particular, Section 20, which requires Beverly to indemnify Defendant PATCH f or any potential claims while there is no obligation from Defendant PATCH to Beverly:

a.    It allows the "Investor", Defendant PATCH, to order an appraisal without Beverly's consent and to charge her for it;
b.    If Beverly disagrees with the appraised amount, she has to pay for another one herself and if she and Defendant PATCH cannot reach an agreement, she is required to arbitrate the issue. As noted above, mandatory arbitration in connection with the making of a residential mortgage loan which is Beverly's principal dwelling is illegal under federal law;
c.    The Owner, Beverly, will have a different required "payout" amount depending upon what sort of transaction she enters into in the future to either refinance the Property, sell it to a third party, sell it to Defendant PATCH, etc. These are the sort of uncertain and differing repayment terms which violate federal and state lending laws;
d.    Specific assertions of what Beverly has to repay Defendant PATCH while simultaneously contending that the transaction is not a loan and that interest is not being charged.

2.23    In spite of the PATCH Defendants' repeated assertions throughout the loan documents that the transaction is not a loan, the accompanying Deed of Trust confirms that a

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

loan is precisely the nature of the transaction in multiple places  Paragraph 7 begins with the

following language:

> Default and Foreclosure and Power of Sale.
>
> Upon default by Trustor in the performance of or upon breach by Trustor of any of the rights and obligations that are secured by this Security Instrument as specified above, **Beneficiary may declare all sums secured by this Security Instrument immediately due and payable and may invoke the power of sale and any other remedies permitted by applicable law, including an action in any court of competent jurisdiction to foreclose this Security Instrument as a deed of trust or mortgage.**

Deed of Trust, Paragraph 7 (emphasis added). The Trustor is Ms. Cary and the Beneficiary is

Defendant PATCH.

2.24    The Deed of Trust at Paragraph 10 also gives the Trustee powers that only the

Beneficiary may demand it exercise, in contravention of its duties under Washington law to

both the "borrower" (in this instance, the borrower is identified as the "Trustor") and the

"beneficiary". RCW 61.24.010(4).

2.25    At Paragraph 12, the exclusive duty to pay for the services of the Trustee, which

only Defendant PATCH controls and directs, is to be borne by Trustor, Ms. Cary. This too is a

blatant violation of Washington law and further evidences just how much the entirety of the

subject loan transaction is one-sided and designed to guarantee that Ms. Cary ends up losing

her home and all of the equity in it to Defendant PATCH.

2.26    The Deed of Trust also purports to be a separate lien on personal property that is

part of the Property, including fixtures, under UCC Article 9. This assertion is absurd and

contradictory to the provisions of Washington law that makes clear that a deed of trust secures

real property and only real property. Further, "fixtures" are not separate from structures on and

part of real property.

LAW OFFICES OF

**MELISSA A. HUELSMAN, P.S.**

705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

2.27    Ms. Cary is not listing all of the onerous and unlawful terms of the loan

agreement herein, but she does assert that every part of the loan documentation violates federal

and state lending laws, as well as Washington real property law. She also did not realize she

had agreed to a mandatory arbitration clause until the loan documents were reviewed with her

attorneys. Had she not taken action to reject the loan terms and rescind the loan entirely under

TILA with the assistance of her attorneys, she would have been bound by all of the loan terms,

including the unlawful mandatory arbitration clause.

2.28    The PATCH Defendants may have further violated TILA and state law when it

made the unilateral decision to have Ms. Cary's escrow handled by an escrow agent, Defendant

Lenders Advantage, which may not licensed in Washington state in a manner that allowed it to

act as an escrow agent in Washington state. The escrow paperwork indicated that Defendant

Lenders Advantage was operating under a California license – not a Washington license.

2.29    Defendant Lenders Advantage also included a mandatory arbitration agreement

in its escrow paperwork which is prohibited by TILA. That agreement purports to require

arbitration of any and all disputes relating to the loan terms. By doing so, Defendant Lenders

Advantage was acting in collusion with the PATCH Defendants to further violate TILA which

prohibits the use of a mandatory arbitration agreement in connection with a federally regulated

mortgage loan. 15 U.S.C. § 1639c(e)(3). The PATCH Defendants cannot use a third party to

impose terms upon a borrower that are prohibited by federal law.

2.30    As evidenced by the fact that Beverly had to file a Chapter 13 bankruptcy,

obtaining a loan from Defendant PATCH did not solve Beverly's financial problems. She

found herself back in financial trouble again due to Alycia's continued addiction problems. She

was required to file this bankruptcy to get some relief, but that was how she discovered the

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

horrific nature of the loan she obtained from Defendant PATCH when she had to try to figure out how much she owed on the loan after a short period of time.

2.31    Upon request by Beverly's bankruptcy counsel, Defendant PATCH provided a "Final Payoff Statement" in the amount of $126,554.00 dated March 5, 2021. Defendant PATCH later filed a Proof of Claim in the amount of $122,500.00 on July 5, 2021.  Apparently, Defendant PATCH cannot even calculate its own payoff calculations using the formula it created. But these amounts make it very clear that the transaction is a loan and a very expensive one at that. Defendant PATCH lent Ms. Cary $64,000.00 on or about July 13, 2019 and less than two years later, it was demanding almost double that amount in repayment. That constitutes an interest rate of almost 50% per annum.

2.32    Defendant PATCH has even gone so far as to try to repeatedly oppose Beverly's attempts to get lawyers hired to represent her in challenging the validity of this loan agreement, telling this Court that Beverly doesn't have a right to challenge its unlicensed loan product and making threats about incurring legal fees in connection with its efforts to prevent her from obtaining recovery that Defendant PATCH maintains it can charge her under the loan contract. In other words, Defendant PATCH is using its high-priced Silicon Valley lawyers to waste this Court's time by making frivolous arguments and legally unsupported opposition to Ms. Cary's right to challenge the terms of this unlawful loan while preparing to charge her for those efforts. This is yet another example of the horrific and onerous nature of the contractual terms of the unlawful loan provided to Beverly by Defendant PATCH, and the predatory nature of Defendant PATCH and all of its affiliated entities, as well as the members of the Defendants' LLCs.

2.33    Defendant Lenders Advantage has acted in collusion with the other Defendants

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

to facilitate this unlawful loan by providing escrow services in Washington state when it is not licensed to do so, and by insisting that Ms. Cary sign an escrow agreement that includes a mandatory arbitration agreement, in direct contravention of the federal lending laws.

2.34    Beverly has incurred damages and been injured in amounts to be determined later by the trier of fact but which include at this stage illegal and unlawful demands for interest and fees which Defendant PATCH is demanding in violation of Washington law. As outlined below, a loan made by an unlicensed lender which is secured by a residence does not allow the lender to recovery **any fees or interest** on the loan. RCW 31.04.035(2).

### III.  CAUSES OF ACTION

First Cause of Action
Quiet Title and To Determine
The Nature and Extent of Any Lien
as Against Defendants PATCH and Patch Homes

3.1    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in the paragraphs above, inclusive, of the Factual Allegations above.

3.2    Under Washington law, RCW 7.28.010, Ms. Cary has the right to bring this action in order to remove the cloud on title in the form of an unlawful mortgage loan secured by a Deed of Trust that has been generated, created and recorded against the subject real Property by Defendants PATCH and Patch Homes, in an attempt to gain for in a monetary recovery against the Property to which it is not entitled, as it is above and beyond any right it may have for making an unlawful loan.

Second Cause of Action
Violation of the Consumer Loan Act, which is a
*Per Se* Violation of the Consumer Protection Act
as Against Defendants PATCH and Patch Homes

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

3.3    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, inclusive, and the Facts Statements, inclusive, and Paragraphs 3.1 through 3.2 of the Causes of Action above.

3.4    The Consumer Loan Act, RCW 31.04.035, **requires** any person or entity to be licensed under the CLA if they obtain a lien on a borrower's residence. Defendants PATCH and Patch Homes do not have a license to make a consumer loan and the loan transaction at issue is a consumer loan secured by Ms. Cary's residence. A violation of RCW 31.04.035 is a *per se* violation of the Consumer Protection Act and as such, Defendants PATCH and Patch Homes are liable to Ms. Cary for their violations of the law, as more particularly described above in Facts Section.

3.5    A *per se* violation of the CPA under the CLA, RCW 31.04.208, meets the requirements of (1) unfair or deceptive act, (2) in trade or commerce, and (3) affecting the public interest. *Id.* As identified above, Ms. Cary has suffered injuries and incurred damages as a direct result of the actions of Defendants PATCH and Patch Homes in connection with their violations of the CLA. Therefore, she is entitled to recover damages, treble damages and reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief to make certain that other Washington consumers are not similarly harmed by the actions of Defendants PATCH and Patch Homes. In addition, Defendants PATCH and Patch Homes may not collect **any** interest on the loan nor any fees, and if any of these amounts have already been paid by Ms. Cary, either through the loan terms or other means, Defendants PATCH and Patch Homes must refund those amounts to her under Washington law.

### Third Cause of Action
### Violation of the Washington State Usury Statute

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

<u>Which is a *Per Se* Violation of the CPA</u>
<u>as Against Defendants PATCH and Patch Homes</u>

3.6    Ms. Cary incorporates herein by reference as though fully set forth at length

each and every allegation and statement contained in all of the Sections above, including the

Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.5 of the

Causes of Action above.

3.7    Under RCW 19.52.020(1),

(1) Except as provided in subsection (4) of this section, any rate of interest shall
be legal so long as the rate of interest does not exceed the higher of: (a) Twelve
percent per annum; or (b) four percentage points above the equivalent coupon
issue yield (as published by the Board of Governors of the Federal Reserve
System) of the average bill rate for twenty-six week treasury bills as determined
at the first bill market auction conducted during the calendar month immediately
preceding the later of (i) the establishment of the interest rate by written
agreement of the parties to the contract, or (ii) any adjustment in the interest rate
in the case of a written agreement permitting an adjustment in the interest rate. No
person shall directly or indirectly take or receive in money, goods, or things in
action, or in any other way, any greater interest for the loan or forbearance of any
money, goods, or things in action.

RCW 19.52.020(1).

3.8    Given the current interest rate published by the Board of Governors of the

Federal Reserve System is extremely low, the effective cap on interest rates in Washington

state is twelve percent (12%) per annum. The loan made to Beverly by Defendants PATCH and

Patch Homes carries an interest rate demonstrably in excess of 12 percent per annum based

upon the amounts demanded by the PATCH Defendants in her Chapter 13 bankruptcy.

3.9    RCW 19.52.030 also provides that:

(1) If a greater rate of interest than is allowed by statute shall be contracted for or
received or reserved, the contract shall be usurious, but shall not, therefore, be
void. If in any action on such contract proof be made that greater rate of interest
has been directly or indirectly contracted for or taken or reserved, the creditor
shall only be entitled to the principal, less the amount of interest accruing thereon

SECOND AMENDED COMPLAINT - 18

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Case 22-01000-TWD    Doc 4    Filed 03/04/22    Ent. 03/04/22 16:47:20    Pg. 18 of 31

at the rate contracted for; and if interest shall have been paid, the creditor shall only be entitled to the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the debtor shall be entitled to costs and reasonable attorneys' fees plus the amount by which the amount the debtor has paid under the contract exceeds the amount to which the creditor is entitled . . .

RCW 19.52.030(1).

3.10　　Consistent with the Usury statute, Ms. Cary is entitled to recover **twice** the interest that she has already paid on the loan, which in this case may be that amount which the PATCH Defendants are demanding in the bankruptcy has already "accrued" and should be deducted from the equity in her home. The PATCH Defendants is only entitled to recover the principal amount provided to Ms. Cary, less any interest which has been accrued and to recover her reasonable attorneys' fees and costs incurred to date. This will also include the costs she was charged in connection with the making of the loan, including the escrow and other fees.

3.11　　The Usury statute also allows for a *per se* CPA violation in the event of a violation of the statute. RCW 19.52.036. A violation of the statute meets the unfair or deceptive and trade or commerce elements of the CPA.

3.12　　Ms. Cary can prove the "public interest" element of a CPA claim which requires proof that the PATCH Defendants "had the capacity to injure other persons" and "has the capacity to injure other persons" because it continues in its business as of the writing of this Amended Complaint. This is also evidenced by the actions of the PATCH Defendants in Ms. Cary's bankruptcy wherein they tried to collect a usurious interest amount by filing a Proof of Claim for the same and because of its actions to try to prevent Ms. Cary from being able to hire lawyers to represent her.

3.13　　Ms. Cary, acting through her attorneys, is also aware that the PATCH

SECOND AMENDED COMPLAINT - 19

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Case 22-01000-TWD　　Doc 4　　Filed 03/04/22　　Ent. 03/04/22 16:47:20　　Pg. 19 of 31

Defendants continue to do business by advertising online through the Noah website offering the same products that she was conned into signing.

3.14    Ms. Cary has suffered injuries and incurred damages as a direct result of the actions of Defendants PATCH and Patch Homes in connection with their violations of the Washington usury statute. Therefore, she is entitled to recover damages, treble damages and reasonable attorney fees and costs pursuant to the statute, as well as permanent injunctive relief to make certain that other Washington consumers are not similarly harmed by their actions. In addition, the PATCH Defendants may not collect **any** interest on the loan nor any fees, and if any of these amounts have already been paid by Ms. Cary, either through the loan terms or other means, the PATCH Defendants must refund double those amounts to her under Washington law.

Fourth Cause of Action
Violation of the Consumer Protection Act
as Against Defendants PATCH and Patch Homes

3.15    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.14 of the Causes of Action above.

3.16    The PATCH Defendants have made numerous misrepresentations about the terms of the contract and whether or not it is a loan, whether the terms of the loan are compliant with Washington state law (they are not) and whether the loan can even be made under Washington law, as well as the amounts owing under the loan and whether PATCH Defendants can charge her interest and any fees on the loan, as more particularly described above. These misrepresentations were unfair and deceptive, and they occurred in trade or commerce, which

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

is PATCH Defendants' business model and purpose.

3.17    Ms. Cary maintains, based upon information and belief, that the Defendants have engaged in making similar misrepresentations to other Washington homeowners and/or that it had the capacity to do so previously and/or has the capacity to do so in the future.

3.18    All of Ms. Cary's injuries and damages were caused by the PATCH Defendants and they are directly responsible for those injuries and damages.

Fifth Cause of Action
Intentional and Negligent Misrepresentation
as Against PATCH Defendants

3.19    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.18 of the Causes of Action above.

3.20    Ms. Cary maintains that there were numerous intentional and/or negligent misrepresentations made to her by the PATCH Defendants about the terms of the loan, by and through their agents, as described more particularly hereinabove.

3.21    Ms. Cary was particularly harmed by the specific misrepresentations made by the representatives of PATCH Defendants about the terms of the loan, and intentional omissions about the loan terms prior to signing since they did not provide her with any information about the loan terms in advance, as described more particularly in the Facts section above.  Included in the misrepresentations were assertions regarding the fact that it is a loan, in spite of PATCH Defendants' assertions to the contrary, the correct amount owing at any given time after the loan is made, the amounts that may be demanded in connection with the loan under Washington law, and the rights to completely control all of the terms of the contract and

SECOND AMENDED COMPLAINT - 21

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Case 22-01000-TWD    Doc 4    Filed 03/04/22    Ent. 03/04/22 16:47:20    Pg. 21 of 31

whether or not Beverly is complying with the loan terms.

3.22    As a result of the actions of the PATCH Defendants, which is also referenced in the loan documents, Beverly has been harassed for monies that she does not owe and now faces the risk of losing her home and all of her equity therein.

Sixth Cause of Action
Violations of the Escrow Registration Agent Act, RCW 18.44, *et seq.*
Which Constitutes A Violation of the CPA as Against
Defendant First American Title Insurance Company Lenders Advantage

3.23    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.22 of the Causes of Action above.

3.24    RCW 18.44.011(8) defines who may act as an escrow agent under Washington law:

> "Escrow agent" means any person engaged in the business of performing for compensation the duties of the third person referred to in subsection (7) of this section.

RCW 18.44.011(8).

3.25    RCW 18.44.011(7) describes the business practices which constitute an "escrow" which is undertaken by an "escrow agent":

> "Escrow" means **any transaction**, except the acts of a qualified intermediary in facilitating an exchange under section 1031 of the internal revenue code, **wherein any person or persons, for the purpose of effecting and closing the sale, purchase, exchange, transfer, encumbrance, or lease of real or personal property to another person or persons, delivers any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by such third person until the happening of a specified event or the performance of a prescribed condition or conditions, when it is then to be delivered by such third person, in compliance with instructions under which he or she is to act, to a grantee, grantor, promisee, promisor, obligee, obligor, lessee, lessor, bailee, bailor, or any agent or employee thereof.** "Escrow" includes the collection and processing of payments

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

SECOND AMENDED COMPLAINT - 22
Case 22-01000-TWD    Doc 4    Filed 03/04/22    Ent. 03/04/22 16:47:20    Pg. 22 of 31

and the performance of related services by a third party on seller-financed loans secured by a lien on real or personal property but excludes vessel transfers.

RCW 18.44.011(7). Emphasis added.

      3.26    Defendant Lenders Advantage is an "escrow agent" as defined by RCW 18.44.011(8) and it performed the acts described in RCW 18.44.011(7) in connection with providing escrow services to Ms. Cary and the PATCH Defendants relating to the loan that is the subject of this litigation.

      3.27    Violations of the Escrow Agent Registration Act, RCW 18.44.301 include the following "Prohibited Practices":

It is a violation of this chapter for any **escrow agent**, controlling person, officer, designated escrow officer, independent contractor, employee of an escrow business, or other person subject to this chapter to:

(1) Directly or indirectly employ any scheme, device, or artifice to defraud or **mislead borrowers or lenders** or to defraud any person;
(2) **Directly or indirectly engage in any unfair or deceptive practice toward any person**;
. . . .
(4) **Knowingly make, publish, or disseminate any false, deceptive, or misleading information in the conduct of the business of escrow, or relative to the business of escrow or relative to any person engaged therein**;
. . . .
(11) **Fail to comply with any requirement of any applicable federal or state act including the truth in lending act, 15 U.S.C. Sec. 1601 et seq. and Regulation Z, 12 C.F.R. Sec. 226**; the real estate settlement procedures act, 12 U.S.C. Sec. 2601 et seq. and Regulation X, 24 C.F.R. Sec. 3500; the equal credit opportunity act, 15 U.S.C. Sec. 1691 et seq. and Regulation B, Sec. 202.9, 202.11, and 202.12; Title V, Subtitle A of the financial modernization act of 1999 (known as the Gramm-Leach-Bliley act), 12 U.S.C. Secs. 6801-6809; the federal trade commission's privacy rules, 16 C.F.R. Secs. 313-314, mandated by the Gramm-Leach-Bliley act; as these acts existed on January 1, 2007, or such subsequent date as may be provided by the department by rule, or any other applicable escrow activities covered by the acts;
. . . .

RCW 18.44.301(1), (2), (4), (11). Emphasis added.

SECOND AMENDED COMPLAINT - 23

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Case 22-01000-TWD   Doc 4   Filed 03/04/22   Ent. 03/04/22 16:47:20   Pg. 23 of 31

3.28    Ms. Cary maintains that Defendant Lenders Advantage in actions more particularly described above which constituted violations of the Prohibited Practices, RCW 18.44.301(1), (2), (4) and (11) by engaging in a "scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person" (1); by "directly or indirectly engage in any unfair or deceptive practice toward any person" (2);  knowingly make, publish, or disseminate any false, deceptive, or misleading information in the conduct of the business of escrow, or relative to the business of escrow or relative to any person engaged therein (4); and fail to comply with any requirement of any applicable federal or state act including the truth in lending act, 15 U.S.C. Sec. 1601 et seq. and Regulation Z, 12 C.F.R. Sec. 226 (11) when it consummated an obviously unlawful loan that included paperwork which expressly disavowed being a loan and which obviously violated TILA in numerous ways, including the fact that none of the documents required by TILA were included in the loan documents.

Seventh Cause of Action
Violations of the Truth in Lending Act, 15 U.S.C. § 1206, *et seq.*
Against PATCH Defendants

3.29    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.28 of the Causes of Action above.

3.30    The PATCH Defendants are required by TILA to make numerous loan disclosure because they make more than five (5) loans per year and because the loan met the definition of a "federally related mortgage loan", which included:

(1) Any loan (other than temporary financing, such as a construction loan):
(i) That is secured by a first or subordinate lien on residential real property, including a refinancing of any secured loan on residential real property,

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

upon which there is either:

        (A) Located or, following settlement, will be constructed using proceeds of the loan, a structure or structures designed principally for occupancy of from one to four families (including individual units of condominiums and cooperatives and including any related interests, such as a share in the cooperative or right to occupancy of the unit);

. . . .

3.31    For that reason, the PATCH Defendants were required to provide Ms. Cary with a Loan Estimate within three business days of the receipt of the consumer's loan application. 12 C.F.R. § 1026.19(e)(1). It was required to contain a good faith estimate of credit costs and transaction terms, based upon the best information reasonably available at the time the disclosure is provided to the consumer and use due diligence in obtaining the information. 12 C.F.R. § 1026.19(e)(1)(i); Comment 19(e)(1)(i)-1). The Estimate was required to be in writing and contain the information prescribed in 12 C.F.R. § 1026.37. The creditor must disclose only the specific information set forth in 12 C.F.R. § 1026.37(a) through (n), as shown in the CFPB's form in appendix H-2, consistent with 12 C.F.R. § 1026.37(o).

3.32    The creditor is responsible under TILA for delivering the Loan Estimate or placing it in the mail no later than the third business day after receiving the application. 12 C.F.R. § 1026.19(e)(1)(iii)). The PATCH Defendants were required to use form H-24, promulgated by the CFPB. 12 C.F.R. § 1026.37(o)(3)(i). PATCH Defendants did not make any disclosures within three business days of Ms. Cary's application or at all, nor did they use form H-24.

3.33    Rather than providing Beverly with standard loan terms which complied with federal and state lending laws, The PATCH Defendants demanded that she re-pay the loan with a percentage of her home's equity through a complex labyrinth of loan terms that no average consumer and even most experienced lawyers would be able to follow and understand, let alone

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

calculate the interest rate, repayment requirements, etc. The Agreement also included an initial

reduction in the alleged value of the Property and allowed Defendant PATCH to exclusively

control the process of determining the value of the Property throughout the history of the

transaction.

3.34    Based upon these violations of TILA, Ms. Cary is entitled to rescind the loan

and she seeks that recovery from the Court. 12 C.F.R. § 1026.23(a)(3). Simultaneous with the

filing of this Amended Complaint, Ms. Cary will also send a Rescission Letter as contemplated

by the statute.

Eighth Cause of Action<br>
Violations of the Truth in Lending Act, 15 U.S.C. § 1639c(e)(3)<br>
Against PATCH Defendants

3.35    Ms. Cary incorporates herein by reference as though fully set forth at length

each and every allegation and statement contained in all of the Sections above, including the

Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.34 of

the Causes of Action above.

3.36    TILA, at 15 U.S.C. § 1639c(e)(3), prohibits the imposition of an arbitration

clause on any mortgage loan which is secured by the borrower's primary dwelling:

(e) Arbitration

(1) In general

No residential mortgage loan and no extension of credit under an open
end consumer credit plan secured by the principal dwelling of the
consumer may include terms which require arbitration or any other
nonjudicial procedure as the method for resolving any controversy or
settling any claims arising out of the transaction.

. . . .

(3) No waiver of statutory cause of action

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

> No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in paragraph (1), shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

15 U.S.C. § 1639c(e)(3).

3.37    The PATCH Defendants acted in collusion with Defendant Lenders Advantage chose to use that entity as the escrow agent in this transaction and allowed it to include a mandatory arbitration clause in the closing documents which sought to impose such terms on the entirety of the loan transaction, in direct contravention of federal law.

3.38    The PATCH Defendants are charged with knowing the federal and state lending laws which applied to this transaction and their intentional actions in violating all of those lending laws is evidenced in the entirety of the transaction, including the repeated assertions in the loan documents themselves that the transaction was not a loan.

3.39    The PATCH Defendants therefore violated federal law by including a mandatory arbitration agreement in the subject loan terms.

Ninth Cause of Action
Violations of the CPA Based Upon Unlawful Imposition
Of a Mandatory Arbitration Clause on Plaintiff
In Violation of Federal Law As Against
Defendant First American Title Insurance Company Lenders Advantage
And The Patch Defendants

3.40    Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.39 of the Causes of Action above.

3.41    As noted above, Defendant Lenders Advantage, acting in collusion with the PATCH Defendants, included an arbitration clause in the escrow documents which is designed to bind Ms. Cary to mandatory arbitration in connection with the making of the subject loan, in direct violation of the requirements of federal law. The Truth in Lending Act, 15 U.S.C. § 1639c(e) prohibits the use of a binding arbitration clause in connection with the making of a residential mortgage loan when it is the borrower's principal dwelling.

3.42    Defendant Lenders Advantage is licensed as an escrow agent in the State of California, as noted on its escrow documents and was required to adhere to TILA and other federal lending laws under Washington law in connection with its work as an "escrow agent" in Washington state. It is therefore charged with knowing the corresponding federal and state lending laws which regulate the making of federally regulated mortgage loans as well as knowledge of Washington escrow laws. It either has intentionally ignored TILA and federal lending laws or it has chosen not to know them and to act in collusion with lenders such as the PATCH Defendants to violate those laws. Either way, it violated TILA and the Washington Escrow Agent Registration Act.

3.43    The PATCH Defendants also are charged with knowing federal and state lending laws, which include TILA and the express prohibition on the imposition of a mandatory arbitration clause. It chose to intentionally ignore this prohibition, craft loan documents that disavow being a loan and colluding with Defendant Lenders Advantage to impose upon Ms. Cary an unlawful mandatory arbitration clause.

3.44    The PATCH Defendants have made numerous misrepresentations about the

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

terms of the contract and whether or not it is a loan, as described more completely above. In addition, it further engaged in unfair and deceptive actions by choosing an escrow agent which imposed upon Ms. Cary in the escrow documents a mandatory arbitration agreement which was prohibited by federal law.

3.45     The PATCH Defendants and Defendant Lenders Advantage engaged in these unfair and deceptive actions in connection with trade or commerce, the operation of their respective businesses, and they had previously when they took these actions the capacity to impose an unlawful arbitration agreement upon borrowers and they continue to have the capacity to impose an unlawful arbitration agreement upon other borrowers at this time.

3.46     Ms. Cary was injured by way of the imposition of this unlawful arbitration agreement because she had to retain and consult with attorneys to make certain that she did not become required to participate in this unlawful arbitration agreement.

3.47     All of Ms. Cary's injuries and damages were caused by the PATCH Defendants and Defendant Lenders Advantage and they are directly responsible for those injuries and damages.

Tenth Cause of Action<br>
Objection to Claim<br>
Against PATCH Defendants

3.48     Ms. Cary incorporates herein by reference as though fully set forth at length each and every allegation and statement contained in all of the Sections above, including the Facts Statements, Paragraphs 2.1 through 2.34, inclusive, and Paragraphs 3.1 through 3.45 of the Causes of Action above.

3.49     Incorporating the prior factual allegations and nine causes of action pled in this Complaint, Defendant PATCH's proof of claim as identified in claim number 11, **Exhibit A,**

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

should be disallowed as a secured claim. Any fees, accrued interest (disguised as an equity interest or otherwise), should be also disallowed. Should the court disallow this claim in its entirety.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ms. Cary prays for the following relief:

1.      Judgment against all of the Defendants in an amount to be proven at trial for recovery of her out of pocket damages, as well as the value of the injuries she has suffered;

2.      Treble damages up to $25,000.00 for each of Ms. Cary's categories of damage and injury as provided under the CPA;

3.      Any statutory damages available under federal or state lending laws, including recovery of costs Ms. Cary has already paid through the escrow process;

4.      An award of attorneys' fees and costs in an amount to be proven at trial;

5.      Disallow Claim 11 in its entirety.

6.      Quiet Title in favor of Debtor, against the PATCH Defendants;

7.      Rescind the loan made by the PATCH Defendants;

8.      For injunctive relief against all of the Defendants to prevent any other Washington consumers from being harmed by the unlawful, unlicensed business activities of all of the Defendants; and

9.      For such other and further relief as the Court deems just and proper.

LAW OFFICES OF
**MELISSA A. HUELSMAN, P.S.**
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220

DATED this 4th day of March, 2022.

LAW OFFICES OF MELISSA A. HUELSMAN, P.S.


By: /s/Melissa A. Huelsman
    Melissa A. Huelsman, WSBA #30935
    Attorney for Plaintiff
    705 2nd Ave, Ste 606
    Seattle, WA 98104-1715
    Tel# 206-475-4504
    *mhuelsman@predatorylending law.com*

LAW OFFICES OF MARK MCCLURE, PS


By: /s/Mark McClure
    Mark McClure, WSBA #24393
    Attorney for Plaintiff
    1103 W. Meeker St, Ste 101
    Kent, WA 98032-5751
    Tel# 253-631-6484
    *mark@mcclurelawgroup.com*

HENRY & DEGRAAFF, PS


By: /s/ Christina L. Henry
    Christina L. Henry, WSBA #31273
    Attorney for Plaintiff
    113 Cherry Street, PMB 58364
    Seattle, WA 98104-2205
    Tel# 206-330-0595
    *chenry@hdm-legal.com*

LAW OFFICES OF
MELISSA A. HUELSMAN, P.S.
705 SECOND AVENUE, SUITE 606
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 475-4304
FACSIMILE: (206) 673-8220